Filed 8/22/25  Leggett v. County of Merced CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JEREMY LEGGETT,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF MERCED et al.,<br><br>Defendants and Respondents. | F088283<br><br>(Super. Ct. No. 23CV-04012)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Susan J. Matcham, Judge.  (Retired Judge of the Monterey Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Law Offices of Vincent W. Davis & Associates and Vincent W. Davis for Plaintiff and Appellant.

Forrest W. Hansen, County Counsel, Jenna M. Anderson, Chief County Counsel, and Jennifer L. Tran, Deputy County Counsel, for Defendants and Respondents.

-ooOoo-

A dependency court removed appellant's son from his home. Eventually, custody of the child was granted to the child's biological mother, who lives in Georgia. Appellant filed a civil suit under 42 United States Code section 1983 against respondents County of Merced, one of its social workers and a social worker supervisor. The complaint alleged respondents committed various acts of misconduct, including lying, in connection with the dependency case.

Respondents filed a demurrer to the civil suit, which the trial court sustained without leave to amend. We conclude appellant has failed to provide an adequate record to review the trial court's ruling and consequently affirm the judgment.

## BACKGROUND

On October 30, 2023, appellant filed a complaint against the County of Merced, Shelly Booker, Jennifer Peterson and several Doe defendants. The operative first amended complaint was filed on April 3, 2024 (the complaint). It asserted three causes of action for civil rights violations under 42 United States Code section 1983. The causes of action were labeled, in part, "Interference with Familial Association," "Unreasonable Seizure," and "Monell-related claims."[1]

*Allegations of the Complaint*

In 2022, appellant's son Z.L. had lived his "entire life – almost 6 years" with appellant and his then-wife, C.S. Also living in the home at the time were C.S.'s daughters T.G.[2] (age 14), M.M. (age 10), and M.H. (age 19).

---

[1] *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, permits 42 United States Code section 1983 claims against local government units.

[2] The complaint refers to this minor by initials T.G. and T.B., and it is unclear which are correct. We will use the initials T.G., as they appear to be used more often.

2.

Based on allegedly "false[]" reports of "problems" in the home, "Child Welfare Services" (MCHSA)[3] initiated an investigation. Social Worker Shelly Booker visited appellant's home at around 10:00 p.m. on January 26, 2022. Booker was accompanied by a Merced City police officer named Ayala.[4]

Appellant alleged that Booker was "against him from the start" of the visit. The complaint alleged Booker's antagonism was attributable, in part, to the fact that appellant is Black and his wife is White. Booker called her supervisor, Jennifer Peterson. Peterson told Ayala that appellant was a sex offender and had an outstanding warrant for " 'failure to appear.' " Peterson wanted Ayala to place a hold (Welf. & Inst. Code, § 305) on T.G., M.M., and Z.L. Ayala contacted police dispatch, which informed him that appellant was not a sex offender, had not been arrested for more than 10 years, and did not have any outstanding warrants. Ayala declined to remove the children.

The next day, Booker and Peterson applied for two protective custody warrants. (See Welf. & Inst. Code, § 340.) Through the two applications, Booker and Peterson sought removal of all the minor children from appellant's residence.[5] One of the applications alleged appellant sexually and physically abused the children. The complaint alleges the court's finding was based on evidence "fabricated" by Booker.

The second application alleged appellant was the perpetrator of domestic violence. Appellant alleges Booker and Peterson made one or more material misrepresentations or omissions in the application, and that Booker "made up" claims of violence.

The court granted both applications. Z.L., T.G., and M.M. were removed from appellant's residence.

---

[3] We will refer to the agency by its more precise name, Merced County Human Services Agency, and accompanying acronym, MCHSA.

[4] We were unable to locate a first name for Officer Ayala in the record.

[5] It appears, based on later proceedings described in the complaint, that one application would have concerned Z.L. and the other concerned both T.G. and M.M.

A jurisdiction/disposition hearing regarding T.G. and M.M. was held on March 17, 2022. The judge "labeled" appellant a sexual predator, a sexual abuser, and a threat to C.S.'s daughters.[6] The complaint alleged that the judge's perception was "poisoned" by false and unsubstantiated accusations made by Booker and Peterson. The court found that appellant was sexually abusing T.G. and M.M.[7]

The hearing regarding Z.L. occurred on March 29, 2022. Appellant claims he did not receive a fair hearing because the judge's perception of him was "so soiled by the previous hearing."

Custody of Z.L. was eventually granted to his biological mother, M.F., who lives in Atlanta, Georgia. While appellant is allowed to visit Z.L. once per month, he is financially unable to do so.

The complaint alleges that in an interview with a social worker on February 28, 2022, Z.L. said he wanted to " 'go back with Dad.' " A social worker described a visit between Z.L. and appellant on March 15, 2022, positively. The social worker said their interactions were appropriate, and Z.L. was laughing, indicating he was enjoying the visit.

Attached to the operative complaint was exhibit A, which was a portion of the MCHSA jurisdiction/disposition report concerning Z.L. The report corroborated the complaint's allegation that Z.L. had said he wanted to " 'go back with dad,' " and that the visit on March 15, 2022, went well. The report also stated,

---

[6] The complaint alleges the judge did this in the jurisdiction and disposition report. Generally, reports are prepared by the county social workers, rather than the court. However, we will take the allegations of the complaint as true.

[7] It is not entirely clear when this particular finding was made. It is included in a paragraph describing the initial applications for a warrant. However, the finding was made on "[c]lear and [c]onvincing evidence" – a standard far more likely to apply later in the dependency process. Consequently, it is more likely the finding was made at the jurisdiction/disposition hearing.

"Placement of six-year-old [Z.L.] with the non-custodial parent would be detrimental to the minor's safety, protection, physical or emotional well-being, as [M.F.] has not had a relationship with [Z.L.] since he was about 18 months old."

*Demurrer Proceedings*

In early May 2024, respondents filed a demurrer to the operative complaint. The demurrer was made on the grounds that the complaint failed to state facts sufficient to constitute a cause of action because the suit was barred by the doctrine of res judicata.

In support of the demurrer, respondents sought judicial notice of the entire case file from the dependency case (Merced County Superior Court case No. 22JP-00013A). The request also identified three specific documents within the case file: (1) the minute order from the detention hearing on February 2, 2022; (2) the detention order after hearing; (3) and the minute order from the contested jurisdiction/disposition hearing on August 25, 2022. Respondents also sought judicial notice of three facts: (1) that "[a] final judgment was rendered following a detention hearing as well as a jurisdictional/dispositional hearing on the merits"; (2) "[a]fter the detention hearing and jurisdictional/dispositional hearing, minor Z.L. was removed from [appellant's] care and placed under the auspices of" MCHSA; and (3) that appellant did not file an intent to appeal from the dependency court rulings at the detention or jurisdiction/disposition phase.

The trial court granted the request for judicial notice of the documents sought by respondents – i.e., the file for Merced County Superior Court case No. 22JP-00013A, including the detention and jurisdiction/disposition orders.[8] The case file is not part of the record on appeal.

The trial court sustained the demurrer without leave to amend. The court concluded that the judicially noticed documents "establish that the instant action and the

---

[8] However, the court's ruling is silent as to respondents' requests for judicial notice of the three requested facts.

causes of action therein, alleging harm as a result of the actions approved by this court in Merced Superior Case 22JP-00013A are barred by the doctrine of res judicata and collateral estoppel."

## DISCUSSION

### APPELLANT HAS FAILED TO PROVIDE AN ADEQUATE RECORD

*Appellate Record*

"On appeal, we must presume the trial court's judgment is correct. [Citation.] In service of that rule, we adopt all intendments and inferences to affirm the judgment or order unless the record expressly contradicts them. [Citation.] [¶] It is the burden of the party challenging a judgment on appeal to provide an adequate record to assess error." (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)

*Res Judicata*

" 'Res judicata' describes the preclusive effect of a final judgment on the merits." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) "Claim preclusion, the ' " 'primary aspect' " ' of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the ' " 'secondary aspect' " ' historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit. [Citation.]" (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)

*Analysis*

Here, the trial court expressly and primarily relied upon the dependency case file in finding that res judicata barred the present civil suit. Yet, the dependency case file is not included in the record on appeal. This is a crucial omission. Because in order to determine whether the court correctly found that res judicata applied, we would need to see whether the present suit seeks to "relitigat[e] issues that were argued and decided in the first suit." (*DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 824.) According to the trial court, the case file from the first case (i.e., the dependency case) established

6.

that res judicata applied.  Thus, the court necessarily concluded the case file affirmatively showed that the present action is merely a relitigation of issues decided in the first case. We cannot scrutinize that conclusion without the case file.  Instead, we presume that ruling was correct because the record does not establish otherwise.  Consequently, we will affirm the judgment.[9]

## **DISPOSITION**

The judgment is affirmed.  Respondents are awarded costs.

DETJEN, Acting P. J.

WE CONCUR:


PEÑA, J.


DE SANTOS, J.

---

[9] As a result, we do not reach the parties' remaining contentions.